**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Medicus Radiology, LLC**

      **v.**                                            Case No.  10-cv-300-PB
                                                        Opinion No. 2011 DNH 001
**Nortek Medical Staffing, Inc.**

**MEMORANDUM AND ORDER**

Medicus Radiology, LLC has filed a complaint against NorTek Medical Staffing, Inc. alleging tortious interference with contractual relations.  NorTek now moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), or, alternatively, to transfer venue pursuant to 28 U.S.C. § 1404(a).  Medicus objects. For the reasons set forth below, I grant NorTek's motion to dismiss.

## I.  BACKGROUND

Medicus, a New Hampshire company based in Salem, New Hampshire, is a locum tenens staffing company that connects health care providers in need of temporary radiology services with radiologists able to fulfill short term assignments.

NorTek, a Texas company with its principal place of business in Kingwood, Texas, is in the same locum tenens business.[1]

In January 2008, Medicus entered into an Independent Physician Agreement with Dr. Robert Latta, a locum tenens radiologist residing in Florida.  Under the agreement, Medicus arranged for Latta to provide temporary radiology services to various medical facilities in Florida, including Radiology Specialists of Florida.  Radiology Specialists of Florida operated at Florida Hospital Ormond Memorial, now known as Florida Hospital Memorial Medical Center ("Florida Hospital").

Under his contract with Medicus, Latta agreed to certain restrictive covenants, including a non-competition provision. The non-compete clause prohibits Latta from returning to any facility for two years after the completion of his assignment, unless he does so through Medicus.  The contract also contains a choice-of-law clause providing that the agreement will be governed by New Hampshire law, and a choice-of-venue provision stipulating that any dispute between the parties will be subject

---

[1] Both Medicus and NorTek belong to the industry group known as the National Association of Locum Tenens Organizations ("NALTO").

-2-

to the exclusive jurisdiction of New Hampshire's state and
federal courts.  Latta provided radiology services at placements
arranged through Medicus for 135 days.

In May 2009, Florida Hospital contacted NorTek in search of
temporary radiologists.  On June 3, 2009, NorTek spoke with
Latta, and recruited him to work for the hospital.  Latta
informed NorTek that Medicus had previously placed him with
Radiology Specialists of Florida, and through that placement he
had provided radiology services at Florida Hospital.  Although
NorTek was unable to review the terms of Latta's contract because
he had apparently misplaced it, Latta indicated that it was a
standard contract that NorTek assumed to be similar to its own.
While NorTek presumed that Latta's contract likely contained a
restrictive covenant, based on its interpretation of its own
contract's restrictive provisions, NorTek believed that Latta's
service at Florida Hospital would not be prohibited.[2]  In

_____

[2] NorTek made this assumption because Latta had not
technically been placed at Florida Hospital, but rather provided
temporary radiology services through Radiology Specialists at
Florida Hospital's predecessor (Florida Hospital Ormond Medical).
Additionally, at the time NorTek and Latta entered into the
agreement, Radiology Specialists of Florida was no longer
affiliated with Florida Hospital.

addition, NorTek spoke with a Florida Hospital representative who indicated that Latta's service at the hospital would not violate Latta's contract with Medicus.

Satisfied that it could employ Latta, in July 2009 NorTek contracted Latta to provide temporary radiology services at Florida Hospital.  The contract was negotiated between a NorTek representative (based in Kingwood, Texas), Latta (a Florida resident) and Florida Hospital (based in Daytona Beach, Florida). On July 7, 2009, NorTek submitted Latta for service at Florida Hospital.

On March 31, 2010, Medicus contacted NorTek and explained that Latta's employment at Florida Hospital constituted a violation of its agreement with Latta and indicated that it would be filing an ethics complaint with the industry group NALTO. NorTek argued that the placement was not improper and also suggested that NALTO review Medicus' complaint.  In the interim, NorTek continued to employ Latta at Florida Hospital until June. Medicus filed suit in Rockingham County Superior Court in June, 2010, and NorTek removed the case to this court in July, 2010.

## II.   STANDARD OF REVIEW

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of persuading the court that jurisdiction exists.  Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008).  Because I have not held an evidentiary hearing, I must apply the "prima facie" standard of review.  See, e.g., U.S. v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Applying the prima facie standard, I "accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing."  Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007).  The defendant's facts "become part of the mix only to the extent that they are uncontradicted."  Id.

## III.   ANALYSIS

When assessing personal jurisdiction over a non-resident defendant in a diversity of citizenship case such as this one, the federal court "is the functional equivalent of a state court sitting in the forum state."  Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).  New Hampshire's long arm statute, N.H.

-5-

Rev. Stat. Ann. § 510:4, authorizes jurisdiction to the full extent permitted by the Federal Constitution.  See N.H. Rev. Stat. Ann. § 510:4; Alacron, Inc. v. Swanson, 765 A.2d 1043, 1045-46 (N.H. 2000).  Therefore, the sole inquiry in this case is "whether the exercise of personal jurisdiction comports with federal constitutional standards."  Sawtelle, 70 F.3d at 1388.

Due Process under the Fourteenth Amendment requires that the defendant have "sufficient minimum contacts with the [forum] state, such that 'maintenance of the suit does not "offend traditional notions of fair play and substantial justice."'" Adelson, 510 F.3d at 49 (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).  The inquiry into "minimum contacts" is necessarily fact-specific, "involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case."  Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).

A court may exercise authority over a defendant by means of general or specific jurisdiction.  N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 24 (1st Cir. 2005).  General jurisdiction exists over a defendant who has maintained "continuous and systematic" activity in a forum sufficient to establish

-6-

jurisdiction over all matters, including those unrelated to the defendant's contacts in the forum state.  <u>Harlow v. Children's Hosp.</u>, 432 F.3d 50, 57 (1st Cir. 2005).  Specific jurisdiction is narrower, and exists only where the plaintiff's cause of action arises from or relates to the defendant's contacts with the forum state.  <u>Id.</u>  Medicus has not asserted that general jurisdiction exists over NorTek.  Accordingly, I address only its claim for specific jurisdiction.

## A.    **Specific Jurisdiction**

The First Circuit analyzes specific jurisdiction using a three-part test: (1) whether the claims arise out of or are related to the defendant's in state activities ("relatedness"), (2) whether the defendant has purposefully availed itself of the benefits and protections of the forum state's laws ("purposeful availment"), and (3) whether the exercise of jurisdiction is reasonable under the circumstances (the "gestalt factors").  <u>Phillips v. Prairie Eye Ctr.</u>, 530 F.3d 22, 27 (1st Cir. 2008).  "[A]n affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction."  <u>Negron-Torres v. Verizon Commc'ns, Inc.</u>, 478 F.3d 19, 24 (1st Cir. 2007).  I will address each element in turn.

-7-

1.   **Relatedness**

The relatedness inquiry asks whether "the cause of action
[underlying the litigation] either arises directly out of, or is
related to, the defendant's forum-based contacts."  <u>Harlow</u>, 432
F.3d at 61.  The relatedness prong is applied "through the prism"
of the plaintiff's claims.  <u>Sawtelle</u>, 70 F.3d at 1389.  When the
plaintiff's claims sound in tort, a court "must probe the causal
nexus between the defendant's contacts and the plaintiff's cause
of action."  <u>Phillips Exeter Acad. v. Howard Phillips Fund</u>, 196
F.3d 284, 289 (1st Cir. 1999).  In contract cases, the court
"must look to the elements of the cause of action and ask whether
the defendant's contacts with the forum were instrumental either
in the formation of the contract or in its breach."  <u>Id.</u>  When
however "the tort is intentional interference with a contractual
or business relationship, the two inquiries begin to resemble
each other."  <u>Jet Wine & Spirits, Inc. v. Bacardi & Co.</u>, 298 F.3d
1, 10 (1st Cir. 2002).

In this case, Medicus claims that NorTek intentionally
interfered with its contract with Latta.  To prove such a claim,
a plaintiff must establish that: "(1) the plaintiff had an
economic relationship with a third party; (2) the defendant knew

-8-

of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference." Singer Asset Fin. Co. v. Wyner, 937 A.2d 303, 312 (N.H. 2007).

The problem here, and in related cases, is that NorTek has had no apparent contact with the State of New Hampshire. Instead, all of the offending acts occurred outside the forum state. Medicus' contractual relationship with Latta was formed while he was a resident of Florida. The contract concerned the provision of radiology services in Florida and performance was contemplated to occur at various medical facilities in Florida. NorTek, a Texas company, allegedly interfered with this contract when it negotiated with Latta and placed Latta at Florida Hospital. None of NorTek's alleged interference was connected with New Hampshire.

The connection Medicus draws between its claims and the forum state are based on the effect of NorTek's interference, specifically the injury to Medicus, which was felt in New Hampshire. The First Circuit has frequently noted that the "effects test" is not applicable when assessing relatedness. See, e.g., Swiss Am. Bank, 274 F.3d at 623 ("[T]he 'effects' test

-9-

is a gauge for purposeful availment and is to be applied only
after the relatedness prong has already been satisfied"); <u>Mass.
Sch. of Law at Andover, Inc. v. Am. Bar Ass'n</u>, 142 F.3d 26, 36
(1st Cir. 1998) ("We have wrestled before with this issue of
whether the in-forum effects of extra-forum activities suffice to
constitute minimum contacts and have found in the negative").
However, at least with respect to contractual interference
claims, this way of thinking appears to be in flux.  <u>See</u> <u>Astro-
Med, Inc. v. Nihon Kohden Am., Inc.</u>, 591 F.3d 1, 21-22 (1st Cir.
2009) (Howard, J., concurring); <u>N. Laminate</u>, 403 F.3d at 25.

     In <u>Astro-Med v. Nihon Kohden American</u> the First Circuit
considered whether specific jurisdiction existed over an out-of-
state defendant whose contractual interference occurred outside
the forum state.  <u>See</u> <u>Astro-Med</u>, 591 F.3d at 9-10.  The court
determined that a sufficiently close nexus existed between the
plaintiff's claim and the forum state, even though the defendant
"from all appearances . . . did not engage in any in-forum
conduct or activity that [was] causally connected to the alleged
tort."  <u>Id.</u> at 21 (Howard, J., concurring).  Instead of
connecting the plaintiff's claim with an in-forum activity, the
court found the relatedness prong had been satisfied primarily

-10-

because the plaintiff's injury, the breach of an in-state contract, was felt in the forum state and thus was causally connected to the plaintiff's contractual interference claim. See id. at 10, 22-23; see also N. Laminate, 403 F.3d at 25 ("a defendant need not be physically present in the forum state to cause injury (and thus 'activity' for jurisdictional purposes) in the forum state").

Similar to Astro-Med, while Medicus did not engage in any in-forum conduct, its out-of-state interference with Medicus' contract is arguably related to Medicus' contractual interference claim because it caused injury in the forum state (a requisite element of the tort). See Astro-Med, 591 F.3d at 22 (Howard, J., concurring) (explaining that contractual interference claim was related to the forum state based on its in-forum effects because the tort was not complete until the plaintiff suffered injury in the forum state); Singer Asset, 937 A.2d at 312 (detailing elements of tortious interference with contract claim). Based on the reasoning of Astro-Med, Medicus has made out a sufficient showing of relatedness between its claim and the forum state.[3]

---

[3] This case arguably differs from Astro-Med because the evidence does not indicate that Medicus's contract with Latta was

2. **Purposeful Availment**

Next Medicus must demonstrate that NorTek's contacts "represent a purposeful availment of the privilege of conducting activities in [New Hampshire], thereby invoking the benefits and protections of [its] laws and making the defendant's involuntary presence before [a New Hampshire] court foreseeable." Mass. School of Law, 142 F.3d at 36. "[T]he cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." Sawtelle, 70 F.3d at 1391. In intentional tort cases, the Supreme Court has identified an "effects test" to determine whether the purposeful availment prong has been satisfied. See Calder v. Jones, 465 U.S. 783, 788-89 (1984). To satisfy the effects test, more than the defendant's mere knowledge that the plaintiff resides in the forum state is required. See id. The plaintiff must also show that the defendant expressly aimed an act at the plaintiff, knowing that

---

formed in the forum state. While it is still clear that Medicus's injury was felt in the forum, thus nominally satisfying Astro-Med's reasoning, the contract's connection with the forum state is more tenuous than in that case because the agreement between Medicus and Latta was formed while Latta was in Florida. I need not speculate on the impact of this distinction as I determine that the plaintiff has not carried its burden of proof with respect to the gestalt factors.

it would be felt by the plaintiff in the forum state.  Id. at
789;  Swiss Am. Bank, 274 F.3d at 624.

     The instant case presents a less convincing showing of
intentionality, and thus a less persuasive case for purposeful
availment, than that of Astro-Med.  In Astro-Med, the court's
finding of purposeful availment was based on the defendant's
knowledge that his out-of state conduct would have an effect in
the forum state.  See Astro-Med, 591 F.3d at 10, 22.  In that
case, the defendant reviewed the plaintiff's contract, noticed
the restrictive covenants and the forum-selection clause,
received legal advice indicating that it was exposing itself to
liability, and decided to act in the face of this knowledge.
See id. at 10.  The defendant's knowledge that its conduct would
affect the plaintiff in the forum state, when coupled with the
decision to proceed in spite of this knowledge, amounted to a
sufficient showing of purposeful availment.  See id.

     In this case, Nortek was aware of Medicus' relationship with
Latta, that the contract between the two parties contained a non-
competition provision, and that Latta had previously provided
services at Florida Hospital through his placement with Radiology
Specialists of Florida.  See Skeckowski Aff. 20, 21, 25, 26, Aug.

-13-

19, 2010 (Doc. No. 8-2).  Because NorTek was unable to review
Latta's contract, however, its exposure to litigation in New
Hampshire was not as apparent.  Further, based on NorTek's
understanding of Latta's contract and its conversation with
Florida Hospital, it believed its placement of Latta would not
violate Medicus's contract. <u>See</u> Skeckowski Aff. 25-29, Aug. 19,
2010 (Doc. No. 8-2).  As a result, NorTek is not chargeable with
the same knowledge as the <u>Astro-Med</u> defendant that its actions
would have an effect in another state.

        Nevertheless, while NorTek may plead ignorance based on its
initial hiring and placement of Latta, it cannot claim that it
was unaware that its actions might have an effect in New
Hampshire after it was notified by Medicus on March 31, 2010 that
its placement violated Medicus' contract with Latta.  Muise Aff.
9 (Doc. No. 11-2).  Despite this knowledge, NorTek continued to
place Latta at Florida Hospital for an additional three months.
Skeckowski Aff. 36, Aug. 19, 2010 (Doc. No. 8-2).  By continuing
its placement of Latta after receiving notification from Medicus,
NorTek knew that its conduct in Florida might cause injury in New
Hampshire.  While not a particularly strong showing, I find that
Medicus has satisfied the purposeful availment prong of the

                              -14-

minimum contacts analysis.  See Astro-Med, 591 F.3d at 10.

### 3.  **Reasonableness**

The exercise of jurisdiction over NorTek must also be

reasonable based on an evaluation of the "gestalt factors." The

gestalt factors include:

> the defendant's burden of appearing; the forum State's
> interest in adjudicating the dispute; the plaintiff's
> interest in obtaining convenient and effective relief;
> the interstate judicial system's interest in obtaining
> the most efficient resolution of the controversy; and
> the shared interest of the several States in furthering
> fundamental substantive social policies.

N. Laminate, 403 F.3d at 26.

The "reasonableness prong of the due process inquiry evokes

a sliding scale."  Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d

201, 210 (1st Cir. 1994).  In other words, "the weaker the

plaintiff's showing on the first two prongs (relatedness and

purposeful availment), the less a defendant need show in terms of

unreasonableness to defeat jurisdiction.  The reverse is equally

true: an especially strong showing of reasonableness may serve to

fortify a borderline showing of relatedness and purposefulness."

Id.

### a.  The Defendant's Burden of Appearance

This factor clearly weighs in favor of the defendant, NorTek.  NorTek is located in Texas.  NorTek has no presence in the forum state, and the burden of forcing a Texas resident to appear in New Hampshire is onerous.  See Prairie Eye, 530 F.3d at 30 (holding that burden on Illinois resident with no connection to forum state was disproportionate).  "This burden, and its inevitable concomitant, great inconvenience, are entitled to substantial weight in calibrating the jurisdictional scales."  Ticketmaster, 26 F.3d at 210.

### b.  Interest of the Forum

While this factor weighs in favor of Medicus, it has a "milder than usual interest" in this case than one might expect.  See id. at 211.  While "[t]he forum state has a demonstrable interest in exercising jurisdiction over one who causes tortious injury within its borders," New Hampshire's "interest in the litigation *sub judice* is arguably lessened by the doubts surrounding whether [the] defendant's act can be said to have been committed in the forum."  Id. at 211 (finding this factor less persuasive because only the effects of the defendant's

-16-

defamation were felt in the forum state).  As noted above, the
defendant's acts were committed solely in Texas and Florida.[4]  As
a result, New Hampshire's interest in this litigation is
diminished because all of the alleged tortious conduct occurred
outside its borders.  See id.

### c.  The Plaintiff's Convenience

While at first blush this factor appears to favor Medicus,
it is difficult to say whether it would be more convenient to try
this case in New Hampshire or Florida.  While Medicus is a New
Hampshire corporation, it also has a presence in Florida.
Additionally, almost all of the relevant events occurred in
Florida and a majority of the witnesses and evidence are located
in that state.  While the plaintiff's choice of forum is granted
a degree of deference with respect to convenience, "the
plaintiff's *actual* convenience seems to be at best a makeweight
in this situation."  Id.

---

[4] While "[t]he purpose of [this] inquiry is not to *compare*
the forum's interest to that of some other jurisdiction, but to
determine the extent to which the forum *has* an interest" as
almost all of the conduct at issue in this case occurred in
Florida, it is at least worth mentioning that Florida clearly has
a greater interest in this litigation than New Hampshire.
See Harlow, 432 F.3d at 67.

-17-

### d.  The Administration of Justice

Aside from the location of the witnesses and other evidence, I do not see any apparent interest of the judicial system that weighs appreciably for either forum.

### e.  Fundamental Substantive Social Policies

No fundamental substantive social policies counsel for jurisdiction in either forum.

## B.  Specific Jurisdiction Conclusion

The instant case presents a close question for the exercise of specific jurisdiction.  Without the benefit of the recent decision in Astro-Med, my jurisdictional analysis would not have proceeded as far as the gestalt factors.  All of the operative events in this litigation occurred outside the state of New Hampshire.  The only nexus between this litigation and the forum state was the plaintiff's injury.  Prior to the Astro-Med decision, it was not apparent that this could be sufficient to entertain jurisdiction over an out-of-state defendant.

While the present case is similar to Astro-Med, there are also factual distinctions that diminish the plaintiff's showing of relatedness and purposeful availment.  In Astro-Med the

defendant had a clear understanding that its actions might result in litigation in the forum state.  In this case, however, NorTek was not assured that its conduct in Florida and Texas would expose itself to suit in New Hampshire.  While NorTek was later apprised of this risk and thus arguably acted with sufficient awareness that its conduct would have an effect in New Hampshire, it only became aware of Medicus' interest eight months after its initial placement of Latta.  The meager showing in each of these prongs ultimately affects the sliding scale of reasonableness. As previously noted, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Ticketmaster, 26 F.3d at 210.

In this case, NorTek is based in Texas and has no connection whatsoever to the state of New Hampshire.  As a result, the burden of litigating this case in New Hampshire is significant. Conversely, both NorTek and Medicus operate in Florida.  Almost all the relevant events occurred in Florida, and almost all of the witnesses and evidence are present in that state as well. Weighing all these considerations against the respective weakness of the relatedness and purposeful availment prongs, I conclude

-19-

that the plaintiff has not carried its burden of proving

jurisdiction.  The exercise of specific jurisdiction under these

facts would be unreasonable.  As a result, the Defendant's Motion

to Dismiss (Doc. No. 8) is granted.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

January 3, 2011

cc:  James P. Harris, Esq.
     Jennifer Turco Beaudet, Esq.
     Steven A. Solomon, Esq.
     Thomas J. Pappas, Esq.